No. 94-618

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

Plaintiff and Respondent,

v.

TODD COLIN OATMAN,

Defendant and Appellant.

FILED

FEB 7 - 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Larry D. Mansch and Marcia M. Jacobson, Public
Defender's Office, Missoula, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General;
John Paulson, Assistant Attorney General, Helena,
Montana

Karen S. Townsend, Deputy County Attorney,
Missoula, Montana

Submitted on Briefs: November 30, 1995

Decided: February 7, 1996

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Todd Colin Oatman appeals from his conviction of five counts of robbery, in a jury trial in the Fourth Judicial District Court, Missoula County. We affirm.

The issue is whether the District Court erred in denying Oatman's motion in limine to ban any mention at his trial of the guilty pleas made by Victor and Gene Camp to the same charges.

Just after midnight on August 22, 1993, Marla Wollgast, the shift supervisor at the Pizza Hut restaurant on Brooks Avenue in Missoula, Montana, noticed a car drive around the restaurant and then stop in the parking lot. Three men got out of the car and entered the restaurant, which had no other customers at that hour. The men were dressed in camouflage jackets and wore gloves. The tallest man appeared to be in his twenties and wore sunglasses and a black wig. One of the others, who appeared older, wore prescription glasses and a camouflage hat with ear flaps.

Waitress Sabrina Dulak asked the men if they preferred smoking or nonsmoking seating. They gave conflicting responses. Then one of them announced that they were undercover police officers on a drug bust and were placing everyone under arrest. The tallest man pulled out a revolver, pointed it at Wollgast and Dulak, and forced the women back into the kitchen, where Elizabeth Olson was doing dishes. The men ordered the three women to lie down on the floor and tied their hands behind their backs with baling wire.

Mark Alexander, another Pizza Hut employee, returned from delivering pizzas a few minutes later. The men forced him to lie

down in the kitchen and tied him up with baling wire like they had the other employees.

Demanding instructions from the employees on how to operate the restaurant's tills, the men opened each till and removed the money from inside. They then took the employees' wallets, purses, and money. The robbers left the restaurant after telling the employees to stay put or get hurt.

After the robbers left, Wollgast was able to untie herself and the others. Dulak called the police. The employees gave the investigating officers descriptions of the robbers, and Alexander made sketches of two of them.

Approximately a month later, an article appeared in the local newspaper concerning four suspects in an attempted robbery of an armored car. The article contained photographs of Oatman, Victor Camp, Gene Camp, and Daniel Koening, and indicated that the men had also been linked to the Pizza Hut robbery. The Pizza Hut employees recognized the three Pizza Hut robbers from the newspaper photos and contacted the police. The employees later picked out the robbers from photo lineups.

Investigators searched Oatman's residence, Gene Camp's residence, and a mini-storage unit rented by Gene Camp. They recovered a camouflage jacket at Oatman's residence and two revolvers at Gene Camp's residence. From the mini-storage unit they recovered a black bag containing two wigs. Under FBI questioning on September 25, 1993, Oatman initially identified the

black bag as his, but when he saw the wigs inside he said that it probably wasn't his bag.

Oatman, Gene Camp, and Victor Camp were each charged with five counts of robbery at the Pizza Hut (a count for robbing each of the four employees, and a fifth count for robbing the restaurant). The Camps both pled guilty to the charges.

Prior to his trial, Oatman filed a motion in limine asking the District Court to prohibit any mention of the convictions of himself and Victor and Gene Camp on federal charges arising from the robbery of the armored car. The motion also asked the court to prohibit testimony about a conversation in which Daniel Koening and Gene Camp discussed Oatman's participation in the Pizza Hut robbery, and to prohibit the robbery **victims from** mentioning their recognition of Oatman through the newspaper article. The court granted the first two requests. As to the third request, the prosecution and defense stipulated that the robbery victims would be allowed to testify that they identified Oatman through the newspaper photograph but the newspaper article itself would not be admitted into evidence and the witnesses would not mention the article's description of the robbery of the armored car.

Oatman also moved the court to prohibit any mention of the guilty pleas, plea bargain agreements, or convictions of Victor and Gene Camp on the Pizza Hut robbery charges. The motion was considered and denied on the first day of trial. In taking judicial notice of the guilty pleas at trial, the court instructed the jury:

4

> Members of the jury, the Court may take judicial notice of public acts, places, facts, and events. YOU may treat such fact as conclusive. But since you are the triers of fact in this case, you are not required to do so.

> The Court takes judicial notice of the pleas of guilty in Cause Nos. 10878 and 10879 by Victor Wayne Camp and Gene Austin Camp.

A Missoula police detective testified that he was in court when the Camps admitted to their participation in the Pizza Hut robbery.

Wollgast identified Oatman at trial as the tall robber with the gun and wig. The other three Pizza Hut employees identified Oatman as one of the robbers, as well. The jury also heard testimony from witnesses for Oatman that he had been residing with Victor Camp and had a close association with Gene Camp.

Oatman's defense was that he had been misidentified as the tall robber. His attorney stressed the discrepancies between the Pizza Hut employees' original description of the height of the tall robber (six feet) and Oatman's actual height (six feet, five inches).

> During closing argument, the prosecuting attorney stated:

> Now we know who robbers number two and number three were. They were Gene Camp, a friend of the Defendant's father, and Victor Camp, the Defendant's roommate at the time.

> Gene Camp has pled guilty to those five robberies at the Pizza Hut. Victor Camp has pled guilty to those five robberies at the Pizza Hut.

> Notice that all four victims of these five robberies selected Gene Camp out of the six-person photo spread as being one of the individuals in the robbery. .

> YOU also saw some wigs, two wigs, that were found during a search of Gene Camp's storage facility, Gene Camp, a friend of the Defendant and a close friend of the Defendant's father.

5

The prosecuting attorney also commented in closing:

> You will remember that they, each and every one of them, identified Gene Camp from the photo line-ups.
>
> Was Marla Wollgast accurate about picking out Gene Camp as one of the robbers that night? Of course, she was. We know that, because he's pled guilty.
>
> Was Mark Alexander accurate about picking out Gene Camp as one of the robbers that night? Of course, he was. He was one of the robbers. Pleaded guilty.
>
> Was Sabrina Dulak accurate about picking out Gene Camp as one of the robbers? He's pled guilty.
>
> Was Elizabeth Olson accurate about picking out Gene Camp as one of the robbers? Yes, she was, because he's pled guilty.

The prosecutor went on to argue that the Pizza Hut employees were likewise accurate in their identification of Oatman as one of the robbers, despite the discrepancies which Oatman had pointed out between the victims' original estimates of the height of the tall robber and Oatman's actual height.

The jury convicted Oatman on all five counts of robbery charged against him. Oatman appeals.

Did the District Court err in denying Oatman's motion in limine to ban any mention at his trial of the guilty pleas made by Victor and Gene Camp to the same charges?

Oatman contends that the convictions of Victor and Gene Camp for the Pizza Hut robberies did not make it more probable that he was the third robber. He maintains that evidence of the Camps' guilty pleas was irrelevant under Rule 401, M.R.Evid. Moreover, he asserts that the danger of unfair prejudice from informing the

jurors of the guilty pleas outweighed any probative value of that information, rendering the evidence inadmissible under Rule 403, M.R.Evid.

A district court has broad discretion to determine whether evidence is relevant and admissible. The test of relevance is whether an item of evidence will have any value, as determined by logic and experience, in proving the proposition for which it is offered. State v. Oman (1985), 218 Mont. 260, 264, 707 P.2d 1117, 1119. The court's determination is subject to review only for abuse of discretion. State v. Sadowski (1991), 247 Mont. 63, 69, 805 P.2d 537, 541. Atrial court's weighing of potential prejudice against probative value will likewise be upheld absent an abuse of discretion. State V. Laird (1987), 225 Mont. 306, 312, 732 P.2d 417, 421.

Oatman argues that the prosecution's comments in closing argument, set forth above, confirm that the purpose for which information about the Camps' guilty pleas was offered was as evidence of his guilt. We disagree. The prosecution's comments shown above are addressed to the credibility of the Pizza Hut employees--specifically, their credibility in identifying the robbers. The credibility of the Pizza Hut employees' identification of him was an issue raised by Oatman.

This Court has not previously addressed the precise issue of whether a nontestifying codefendant's guilty plea is admissible to corroborate an eyewitness's identification of the defendant as one of the perpetrators of the crime. We have noted "the general

7

principle that evidence of a codefendant's guilty plea is inadmissible." State v. Price (1988), 234 Mont. 144, 150, 762 P.2d 232, 236. We have recognized, however, the exception to this general principle when evidence of a codefendant's guilty plea is offered to aid the jury in assessing the credibility of a codefendant who testifies at the defendant's trial. Price, 762 P.2d at 236. In so doing, we cited United States v. Halbert (9th Cir. 1981), 640 F.2d 1000, in which the Ninth Circuit Court of Appeals expounded upon the admissibility of codefendants' guilty pleas.

> As a principle of general acceptance, the guilty plea or conviction of a codefendant may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial. While the evidence may not be used to establish a defendant's guilt, it may properly be considered by the jury in evaluating witness credibility. Admissibility of the plea turns on the purpose for which it is offered. When that purpose is to further the jury's difficult task of evaluating credibility, it is relevant and admissible without reference to the identity of the offering party.

Halbert, 640 F.2d at 1004 (citations omitted).

In the present case, the prosecutor asked the District Court to take judicial notice of the Camps' guilty pleas as probative of the accuracy of the Pizza Hut employees' identification of the robbers. In granting that request, the court stated:

> Well, the Court is going to allow the questions about the guilty pleas and the plea bargain based on the arguments of counsel here. It seems that the credibility of those witnesses and their identifications are at issue, and that their testimony about the process of identifying the Camps is relevant to their credibility and will assist the jury in making a final determination[.]

This statement of the purpose for the court's decision to inform the jury that it took judicial notice of the guilty pleas corre-

sponds to the purpose for which such evidence is admissible under the law as discussed by the Ninth Circuit Court of Appeals above.

As stated above, Oatman's defense to the charges against him was that the Pizza Hut employees had misidentified him as one of the robbers, especially because of the height issue. The employees' credibility in identifying the robbers was thus placed at issue. The employees' correct identification of the Camps as two of the robbers bolstered their credibility. On balance, we conclude that the court did not abuse its discretion in deciding that the probative value of informing the jury that the court had taken judicial notice of the Camps' guilty pleas outweighed the prejudicial potential of that information. We conclude that under the **circumstances** here presented, evidence of the Camps' guilty pleas was admissible.

Finally, this Court has ruled that taking judicial notice of proceedings against a codefendant does not taint the fairness of the defendant's trial if the court instructs the jury that it has the prerogative to accept or reject the judicially-noticed facts as evidence. State v. Hart (1981), 191 Mont. 375, 389, 625 P.2d 21, 29, cert. denied, (1981) 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102. The jury was so instructed at Oatman's trial.

We affirm the judgment of the District Court.

_/s/_ _____
Chief Justice

We concur:

_Karla M. Gray_

_William E. Hunt Sr._

_[signature]_

_Jim Rice / Trieweiler_
Justices

February 7, 1996

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Larry D. Mansch/Marcia M. Jacobson
Public Defender Office
317 Woody Street
Missoula, MT 59802

HON. JOSEPH P. MAZUREK, Attorney General
Kathy Seeley, Assistant
Justice Bldg.
Helena, MT 59620

Karen S. Townsend
Deputy County Attorney
Missoula County Courthouse
Missoula, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
Deputy