No. 96-330

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

CHRISTOPHER ARTHUR MCKEON,

Defendant and Appellant.


APPEAL FROM:     District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Brian P. Fay, Angel, Screnar, Coil, Bartlett & Fay, Bozeman, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Tammy K. Plubell, Assistant
Attorney General, Helena, Montana; Marty Lambert, Gallatin County
Attorney, Bozeman, Montana


Submitted on Briefs: March 27, 1997

Decided:  May 8, 1997
Filed:


_____
Clerk
Justice William E. Hunt, Sr. delivered the Opinion of the Court.


Appellant Christopher Arthur McKeon (McKeon) was found guilty of one count
of robbery and one count of felony theft following a jury trial in the Eighteenth Judicial
District Court, Gallatin County, and was subsequently sentenced to a term of years at the

Montana State Prison. McKeon appeals, arguing that the District Court made several incorrect evidentiary rulings which require that his guilty verdicts be reversed. We affirm the District Court.

McKeon presents the following issues for our review:

1. Whether McKeon's booking photo, which was not part of the reciprocal discovery package, should have been admitted into evidence.

2. Whether photographs depicting McKeon with his alleged accomplices, brandishing firearms, should have been excluded as irrelevant and highly prejudicial.

3. Whether the prosecution should have been permitted to elicit testimony from the arresting officer speculating as to the most direct route McKeon may have traveled from Montana to Iowa.

4. Whether testimony identifying McKeon's vehicle as a stolen vehicle should have been excluded as "other crimes" evidence.

5. Whether the "cumulative error doctrine" as applied to the above-cited errors warrants a finding of reversible error.

BACKGROUND

At approximately 10:50 a.m. on November 5, 1994, two men robbed the Story Exxon gas station and convenience store in Bozeman, Montana. The clerk on duty at the time of the robbery testified at trial that the two men wore black knit caps pulled down to partly cover their faces. The caps had eye holes cut into them to allow the robbers to see. One of the robbers, robber #1, was carrying a sawed-off shotgun partly concealed under his coat. Robber #2 was carrying under his coat a sawed-off rifle. The clerk described robber #1 as in his forties, approximately five feet, six inches tall and 160 pounds, and unshaven, with dark, grey-specked facial hair. The clerk described robber #2 as a younger man, in his thirties, nearly six feet tall, and, like robber #1, unshaven.

The robbers pointed their weapons at the clerk and demanded the money in the till and in the store safe. The robbers then made the clerk lie face down on the floor, where they bound his wrists and covered his eyes with duct tape. Before leaving the store with nearly $1460, the robbers took a ten-pack roll of Copenhagen snuff from the counter and a twelve-pack of Budweiser beer from the cooler. The clerk notified the authorities shortly after the robbers left, but a police investigation in Bozeman failed to result in either the identification or apprehension of any suspects in the robbery.

However, at approximately 8:00 p.m. on November 5, 1994, a Johnson County, Wyoming Deputy Sheriff, John Wohlbrandt, after investigating a stolen vehicle report, arrested Cecil Ashworth outside of a convenience store in Buffalo, Wyoming. At the time of his arrest, Ashworth was unkempt and unshaven, and had $450 in his pocket.

Deputy Wohlbrandt impounded the stolen vehicle. Officers from the Bozeman Police Department who were investigating the robbery there were dispatched to Buffalo the next day. A search of the stolen vehicle resulted in the seizure of a roll of Copenhagen, a sawed-off 22-caliber rifle and ammunition, an open twelve-pack of Budweiser beer, a brown knit cap with eye holes cut into it, and an Oregon license plate.

Meanwhile, on November 6, 1994, at approximately 10:00 p.m., an Iowa state trooper pulled over a black Ford Courier pick-up truck for speeding. The truck's lone license plate was from Oregon, and it was later determined that the license plate's mate was the Oregon plate found in the car Ashworth stole in Wyoming. It was also determined later that the pick-up was similar in color, year, and design to the truck seen circling the area around the Story Exxon shortly before the robbery occurred there. The trooper ran a check on the truck, determined that it was stolen, and then arrested the driver, McKeon, and the female passenger, Debbie Ashley. At the time of their arrests, McKeon had $482 cash in his billfold and Ashley had $160 cash in her purse. A booking photograph was later taken of McKeon, which depicts a man with dark hair and dark, grey-specked facial stubble.

The pick-up was impounded, and subsequently searched. Iowa authorities initially discovered a sawed-off .12-gauge shotgun, 40 rounds of .12-gauge shotgun ammunition, a plastic bag with loose change, and a bag containing rolls of quarters, dimes, and nickels. They also found a hacksaw blade, a dark blue knit cap with eye holes cut into

it, an atlas opened to the state of Iowa, a .22-caliber shell and a roll of duct tape. A subsequent search revealed a receipt from Sunshine Foods in Sioux Falls, South Dakota, dated November 6, 1994, and a receipt from Thrifty Motor Inn in Rapid City, South Dakota, dated November 5, 1994.

Ashworth and McKeon were charged with robbery and theft in connection with the Story Exxon hold up, and Ashley was charged with accountability for robbery. McKeon and Ashworth, identified as robbers #1 and #2, respectively, were tried separately, and Ashley, pursuant to a plea agreement, testified as a State witness in McKeon's trial. Ashley testified that she, McKeon and Ashworth traveled together through the western United States in the fall of 1994; that in October in Colorado she purchased a shotgun for McKeon and a rifle for Ashworth, weapons which the men later altered and used in the robbery in November; that she, McKeon and Ashworth drove to Bozeman in the black Ford Courier pick-up truck, and that McKeon and Ashworth, with masks on and their weapons under their jackets, entered the Story Exxon mid-morning on November 5, 1994; that after the robbery, the three of them drove to Gillette, Wyoming, where Ashworth separated from McKeon and Ashley; and, that she and McKeon continued on eastward until they were arrested in Eldora, Iowa.

Over McKeon's objections, the court admitted the following evidence relevant to this appeal: the booking photograph of McKeon taken after his arrest in Iowa; a photograph, taken in October 1994, of McKeon brandishing a shotgun and Ashworth brandishing a rifle; a photograph, taken in October 1994, of McKeon and Ashley; a photograph, taken in October 1994, of Ashworth and Ashley; testimony regarding the most direct route McKeon may have traveled from Montana to Iowa; and, testimony identifying as stolen the pick-up McKeon was driving when he was arrested in Iowa. Following the presentation of this and other evidence, the jury found McKeon guilty of the crimes charged. McKeon appeals.

## STANDARD OF REVIEW

The district courts have broad discretion to determine whether or not evidence is relevant and admissible. State v. Oatman (1996), 275 Mont. 139, 143-44, 911 P.2d 213, 216. An item of evidence is relevant if it will have any value, as determined by logic and experience, in proving the proposition for which it is offered. Oatman, 911 P.2d at 216 (citation omitted). We review a district court's evidentiary ruling to determine whether the court has abused its discretion. Oatman, 911 P.2d at 216 (citation omitted). Even if evidence is improperly admitted, we will reverse the district court only if the admission of the evidence prejudiced the defendant. State v. Gray (1983), 202 Mont. 445, 449, 659 P.2d 255, 257. "The test of prejudicial error requiring reversal is this: Is there a reasonable possibility that the inadmissible evidence might have contributed to the conviction?" Gray, 659 P.2d at 257 (citation omitted).

## ISSUE ONE

Whether McKeon's booking photo, which was not part of the reciprocal discovery package, should have been admitted into evidence.

At trial, McKeon's hair was a brownish-red color. The Story Exxon clerk and others who had glimpsed the robbers described robber #1 as having dark hair. When Iowa State Trooper Pearson, who had arrested McKeon in Iowa, came to Bozeman to testify, he brought with him McKeon's booking photograph. When the State discovered that Trooper Pearson had the photo, it notified McKeon and provided him with the photo the day before trial. The photograph, which shows a dark-haired McKeon at the time of his arrest in Iowa, was admitted at trial and served to support the State's assertion that McKeon was indeed robber #1, while at the same time undermined McKeon's assertion that he was not robber #1 because his appearance was inconsistent with the descriptions given by the State's witnesses.

McKeon contends the photograph was improperly admitted because it was not part of the reciprocal discovery package. Sections 46-15-322 and -323, MCA, require the prosecution and the defense to disclose all relevant information in order to "provide notice and prevent surprise." State v. Davidson (1994), 266 Mont. 404, 410, 880 P.2d 1331, 1335 (citing State ex rel. Sikora v. District Court (1969), 154 Mont. 241, 462 P.2d 897).

When deciding whether a photograph is admissible, the court must first determine

whether the photograph is relevant and, second, whether the probative value of the photograph outweighs the possible prejudicial effect. Rule 403, M.R. Evid.; see also State v. Bristow (1994), 267 Mont. 170, 176, 882 P.2d 1041, 1045. Here, the relevancy of the photograph is not seriously disputed. This case is about the identity of robber #1, and the photograph, taken two days after the commission of the robbery, establishes McKeon's identity around the time of the robbery and corroborates State witness descriptions of the hair color of robber #1.

However, McKeon contends that because the photograph was not produced with other evidence at the time of reciprocal discovery, but rather was produced the day before trial, he was unfairly surprised, the prosecution gained an unfair advantage, and his case was prejudiced. McKeon's argument here would be stronger were there any indication that the State deliberately withheld the photograph until the day before trial. A review of the record does not reveal this to be the case. Instead, the record shows McKeon acknowledged that the State had not intentionally withheld the photograph from him. That being the case, the State correctly contends that it properly and timely informed McKeon of the photo's existence, pursuant to its continuing duty to disclose. Section 46-15-327, MCA.

The State's compliance with the spirit of the discovery rules does not end the inquiry here. A relevant piece of evidence disclosed in accordance with the discovery rules may still be excluded from trial if its probative value is outweighed by its potential prejudicial effect. That is not, however, the situation here. McKeon placed identity at issue at trial, noting in his opening statement the discrepancy between the State's witnesses' descriptions of robber #1, and his appearance at trial. The photograph's value in linking McKeon and robber #1 as the same person outweighs any potential prejudicial effect. In any event, we are not convinced that McKeon was unfairly prejudiced by the photograph. McKeon's decision to alter his physical appearance at trial from his described physical appearance at the time of the robbery, to insert the issue of mistaken identity, was a strategic decision that failed. We commented on another defendant's failed strategic decision in State v. Madera (1983), 206 Mont. 140, 148, 670 P.2d 552, 556:

He took a chance and his strategy failed. He was caught in a trap of his own making, and no constitutional or statutory impurity arose thereby.

The court did not abuse its discretion when it admitted McKeon's booking photograph.

ISSUE TWO

Whether photographs depicting McKeon with his alleged accomplices, brandishing firearms, should have been excluded as irrelevant and highly prejudicial.

Iowa police officers discovered among Debbie Ashley's personal effects three Polaroid photographs which were ultimately admitted at McKeon's trial. State's exhibit 69 is a photograph of McKeon posing with a shotgun in his hands, and Ashworth posing with a rifle in his hands. On the back of the photograph are the inscriptions "10/17/94" "Bubba & my Baby" and "Utah." State's exhibit 70 is a photograph of Ashley and McKeon standing closely together, McKeon's arm around Ashley's shoulder. On the back of the photograph are the inscriptions "10/17/94" "Me and my Baby" and "Utah." State's exhibit 71 is a photograph of Ashley and Ashworth, on the back of which are the inscriptions "10/17/94" "Me and Bubba" and "Utah."

McKeon contends that the photographs should not have been admitted, as they are irrelevant to the issue of the identity of robber #1, unnecessary cumulative evidence, and prejudicial. McKeon asserts that State's exhibit 71, the photograph of Ashley and Ashworth, is irrelevant to the ultimate issue at trial, whether McKeon is robber #1. McKeon argues that the other two photographs are cumulative evidence of McKeon's identity in light of the testimony of the arresting officer and the Iowa booking photograph, both of which establish McKeon's identity near the time of the robbery. Finally, McKeon claims that State's exhibit 69, the photograph of McKeon and Ashworth "boastfully" posing with their weapons, is by its very nature unfairly prejudicial.

We do not agree with McKeon's characterization of the purpose and effect of these photographs. All three photographs are relevant for the purpose of corroborating portions of Debbie Ashley's accomplice testimony, in which she described the chain of events

leading up to and following the Story Exxon robbery. In particular, the photographs corroborate that she, Ashworth, and McKeon were traveling together around the western United States in the latter part of 1994, and that she purchased a shotgun for McKeon and a rifle for Ashworth in Colorado in mid-October, 1994, weapons similar to the sawed-off shotgun and sawed-off rifle used in the Story Exxon robbery on November 4, 1994.

We are not swayed by McKeon's argument that because he did not dispute the portions of Ashley's testimony that these photographs corroborate, and because those portions of testimony do not address the ultimate issue in the case, the photographs therefore are not corroborative of anything relevant and should have been excluded. This argument loses sight of both the fact that McKeon strongly attacked Ashley's credibility as a witness, and, similarly, that as an accomplice Ashley's testimony was by statute ineffective if not corroborated. See 46-16-213, MCA. Nor are we convinced that exhibit 69, the photograph of McKeon and Ashworth brandishing their weapons, is so prejudicial as to render it inadmissible. As stated, the photograph corroborates Ashley's testimony that she purchased for the men weapons similar to those used in the robbery. Moreover, the photograph is probative of the fact that McKeon and Ashworth had in their possession approximately three weeks prior to the robbery weapons similar to those used in the robbery. That the weapons in the picture are not altered in the way that the robbery weapons were does not render the photograph irrelevant, especially when considered in conjunction with other pertinent evidence in the case, namely the hacksaw blade found in the black Ford pick-up truck. The probative value of this photograph outweighs any possible prejudicial effect.

The State's corroboration of Ashley's testimony was both necessary and prudent, and the Polaroid photographs were properly admitted for that purpose. The court did not abuse its discretion.

ISSUE THREE

Whether the prosecution should have been permitted to elicit testimony from the arresting officer speculating as to the most direct route McKeon may have traveled from Montana to Iowa.

At trial the State questioned Iowa Police Trooper Stoner about two receipts he discovered pursuant to a search of the black pick-up after it had been impounded. Officer Stoner explained that he found a receipt dated November 5 from the Thrifty Motor Inn in Rapid City, South Dakota, and a receipt dated November 6, 1994, from Sunshine Foods in Sioux Falls, South Dakota. Officer Stoner then was asked to describe the most direct route from Bozeman to Eldora, Iowa, where McKeon was arrested. In describing this route, Trooper Stoner used as mileposts Gillette, Wyoming; Rapid City, South Dakota; and Sioux Falls, South Dakota. McKeon contends that this testimony was improper because it allowed the jury "to indulge in improper speculation and guesswork." Kuiper v. Goodyear Tire & Rubber Co. (1983), 207 Mont. 37, 53, 673 P.2d 1208, 1217. McKeon argues that in admitting this testimony, the court committed reversible error.

We agree that Trooper Stoner's "direct route" testimony was improper, but do not agree that in allowing the testimony, the court committed reversible error. Officer Stoner had no personal knowledge of the route McKeon had traveled prior to his arrest in Iowa, and, while he did not expressly state that McKeon followed the direct route from Montana to Iowa, the implication is clear. The description of the route, along with the receipts from two towns along the route, would together promote improper juror speculation as to where McKeon had been prior to his arrest in Iowa.

However, McKeon has failed to demonstrate how the admission of this testimony requires that we reverse. "The test of prejudicial error requiring reversal is this: Is there a reasonable possibility that the inadmissible evidence might have contributed to the conviction?" Gray, 659 P.2d at 257 (citation omitted). The prejudice McKeon alleges resulted from the testimony is that the jury could, through sheer speculation, follow the "direct route" backwards from Eldora, Iowa to Bozeman, placing McKeon at the site of the robbery. However, McKeon fails to consider the other evidence properly admitted at trial which is probative of both his involvement in the Story Exxon robbery and his travel route from Bozeman to Eldora: testimony from Bozeman resident Mark Bissell that he saw a black Ford Courier pick-up with three occupants circle around and then park in the Story Exxon parking lot mid-morning on November 5, 1994; testimony from

Trooper Pearson that McKeon was driving a black Ford Courier pick-up when he was arrested in Iowa; the clerk's description of the robbers, corroborated by the physical evidence recovered in Wyoming and Iowa; and, Ashley's account of the robbery and her subsequent travels with McKeon and Ashworth to Wyoming, then with McKeon only on to Iowa. In light of the other evidence placing McKeon in Bozeman on November 5, 1994, the court's erroneous admission of Trooper Stoner's "direct route" testimony did not unfairly prejudice McKeon, did not contribute to his conviction, and is not cause for reversal.

## ISSUE FOUR

Whether testimony identifying McKeon's vehicle as a stolen vehicle should have been excluded as "other crimes" evidence.

At trial, the State elicited testimony from Trooper Pearson that when he pulled McKeon over for speeding in Iowa and subsequently "ran a check" on the pick-up's license plate, he learned that the truck was reported as stolen. McKeon argues that this testimony was admitted in violation of the rule prohibiting "other crimes" evidence. See State v. Matt (1991), 249 Mont. 136, 814 P.2d 52; see also Rule 404(b), M.R.Evid.

The State contends, however, that at trial McKeon did not enter a specific objection to this testimony, and therefore improperly raises this issue on appeal. Citing Rule 103 (a)(1), M.R.Evid., and State v. Greytak (1993), 262 Mont. 401, 404, 865 P.2d 1096, 1098, the State argues that a defendant is required to "object in a timely manner and state the specific ground unless the specific ground was apparent from the context." While McKeon did object at trial, the State claims that this objection was not specific, nor was the specific ground for the objection apparent from the context.

The relevant testimony involved the Gallatin County Attorney's questioning of Trooper Pearson about his, Pearson's, actions upon stopping McKeon for speeding. The County Attorney asked Trooper Pearson after Pearson explained that McKeon gave him false identification:

Q:     And what happened then?

A:     Then I called in to dispatch my location and I gave them the plate that was on the Ford Courier.

Q:     What do you mean, you gave them the plate that was on the Ford Courier?

A:     I told them the vehicle I was out with, and I gave them the plate numbers so they could run it to find out if it would be stolen or who it came back to, what kind of vehicle it came back to.

Q:     And did you receive that information from your radio dispatch?

A:     I did.

[Defense Counsel]: Objection, Your Honor.

THE COURT:        Overruled.

[County Attorney]: You may answer.

Q:     Did you receive that information?

A:     I did.

Q:     And what information did you receive?

A:     I received that it was a stolen vehicle.

McKeon's objection was generic, not specific. Moreover, we are not convinced that when this dialogue took place, the specific grounds for McKeon's objection were apparent either to the court or to the county attorney. "Before the trial court will be put in error it must be given a chance to correct itself." State v. Walker (1966), 148 Mont. 216, 223, 419 P.2d 300, 304. Similarly, the party offering the evidence should be given an opportunity to make an offer of proof or rephrase his questions to explain, contest, or avoid the purported error. McKeon's nonspecific objection toTrooper Pearson's testimony was insufficient for purposes of appeal, and we therefore will not consider the merits of this issue.

## ISSUE FIVE

Whether the "cumulative error doctrine" as applied to the above-cited errors warrants a finding of reversible error.

McKeon contends that his allegations of court error, in the aggregate, were so prejudicial as to warrant reversal. However, we have determined that the only court

error here was in allowing the speculative "direct route" testimony, and that the error was not prejudicial.  McKeon's "cumulative error" argument is therefore inapplicable and we need not address it.

CONCLUSION

The District Court did not abuse its discretion in making the evidentiary rulings at issue here.  McKeon has made no showing of prejudice.  The evidence of his guilt is overwhelming.  Therefore, we affirm the decision of the District Court.

Affirmed.

/S/  WILLIAM E. HUNT, SR.

We Concur:

/S/  J. A.  TURNAGE
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART