HONORABLE LARSON, District Judge,
delivered the Opinion of the Court.
¶1 Appellant Simmons Oil Corporation (hereinafter Simmons) appeals trial and post-trial rulings from a November 1993 jury verdict which awarded it $2,238,743.00 against defendant Wells Fargo Bank (hereinafter Wells Fargo). This Court has expressly permitted Wells Fargo to appeal the denial of its request for attorney fees as a sanction against Simmons for pursuing a Rule 60(b), M.R.Civ.P., motion during this appeal. We affirm the District Court.
¶2 Simmons presents the following issues on appeal:
¶3 1. Whether the District Court erred when it denied Simmons’ motion in limine concerning Wells Fargo’s expert testimony of refinery value;
¶4 2. Whether the District Court erred when it instructed the jury to disregard testimony by Simmons’ damage expert, Don Knudsen, concerning defendant Holly Corporation’s (hereinafter Holly) analysis of a sulphur reduction unit at the Black Eagle Refinery (Exhibit 73);
¶5 3. Whether the District Court erred when it refused Exhibit 73 — a Holly budget document analyzing the projected profits of the sulphur reduction unit at the Black Eagle Refinery;
*123 ¶6 4. Whether the District Court erred when it refused Simmons’ motion for new trial on damages;
¶7 5. Whether the District Court erred when it calculated the set-off for the earlier settlement with a former co-defendant, Holly;
¶8 6. Whether the District Court erred when it refused Simmons’ post-trial request for attorney fees.
¶9 With the express permission of this Court, Wells Fargo presents the following issue on appeal from our remand to the District Court:
¶10 7. Whether the District Court erred when it refused Wells Fargo’s request for attorney fees as sanctions for Simmons’ Rule 60(b), M.R.Civ.P., motion.

Procedural and Factual History

¶11 This is the third appeal stemming from the sale of Simmons’ debt by Wells Fargo to Simmons’ partner and former co-defendant, Holly. Simmons alleged in its complaint that when Wells Fargo sold the Simmons’ debt to Holly, Wells Fargo knew Holly wanted to acquire sole ownership of the Black Eagle Oil Refinery jointly owned by a Simmons/Holly partnership. At the time of the sale to Holly, Simmons had also offered to purchase this debt. Wells Fargo refused and instead sold the debt to Holly. Holly foreclosed the debt and Simmons lost its interest in the refinery.
¶12 Simmons filed this case in December 1988, against Holly and two of its subsidiaries and Wells Fargo. In May 1989, the District Court granted Holly’s and Wells Fargo’s motions to dismiss for lack of personal jurisdiction. This ruling was reversed in Simmons Oil Corp. v. Holly Corp. (1990), 244 Mont. 75, 796 P.2d 189 (Simmons I).
¶13 Holly and Wells Fargo were granted summary judgment in October 1991. In a settlement prior to this Court’s decision on the appeal of the summary judgment, Simmons Oil Corp. v. Holly Corp. (1993), 258 Mont. 79, 852 P.2d 523 (Simmons II), Holly paid Simmons cash and a promissory note worth $3.5 million and forgave notes of $18 million in return for stock of Simmons and dismissal from the action.
¶14 Pursuant to the opinion in the second appeal, a jury trial was held November 1-12,1993, on the issue of breach of the implied covenant of good faith and fair dealing. The jury awarded Simmons $2,238,743.00. Extensive post-trial activity followed. First, Simmons requested and received court approval for the deposition of Leland Griffin based on the allegation that Wells Fargo’s expert had committed perjury. Next, Simmons sought a new trial based on the alleged perjury of Mr. Capers. Wells Fargo then moved for entry of judgment *124 with a verdict of $0.00 in view of the Holly settlement which it contended had a present value of $3.5 million. Simmons opposed the motion and sought in excess of $900,000.00 in attorney fees and costs.
¶15 Simmons’ motions for new trial and attorney fees were denied in December 1994. The District Court then calculated the set-off for the Holly settlement and entered judgment for Simmons against Wells Fargo for $0.00 plus costs of $25,536.94. Simmons filed its Notice of Appeal, and briefing to this Court commenced.
¶16 During the briefing, Simmons raised an issue concerning new evidence affecting the value of the contingency note which was part of the settlement between Simmons and Holly. This Court issued an order on January 4, 1996, remanding the matter back to the District Court for consideration of the issue under Rule 60(b), M.R.Civ.P, and suspending the appeal process pending the District Court’s consideration of the issue. In May 1996 the District Court denied the Rule 60(b), M.R.Civ.P, motion, as well as a subsequent request by Wells Fargo for sanctions (attorney fees). Following the District Court ruling on May 1, 1996, this Court issued a supplemental briefing order on May 30, 1996. In Simmons’ brief filed pursuant to that order, Simmons withdrew from the appeal the Rule 60(b), M.R.Civ.P, issue of the valuation of the contingency note. However, Wells Fargo preserved for appeal its request for attorney fees from Simmons as sanctions for Simmons’ Rule 60(b), M.R.Civ.P, motion.

Standard of Review

¶17 We review a district court’s rulings on evidentiary issues for an abuse of discretion. In Re Matter of Seizure of $23,691.00 (1995), 273 Mont. 474, 905 P.2d 148; Hansen v. Hansen (1992), 254 Mont. 152, 160, 835 P.2d 748, 753; Cech v. State (1979), 184 Mont. 522, 604 P.2d 97. The question is not whether this Court would have reached the same decision, but, whether the district court abused its discretion in reaching the decision to deny admissibility. Ingraham v. State (1997), 284 Mont. 481, 945 P.2d 19. An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. Investigation Records of City of Columbus Pol. Dept. (1995), 272 Mont. 486, 488, 901 P.2d 565, 567.
¶ 18 This standard also applies to the denial of a motion for new trial based on evidentiary rulings and further requires the abuse of discretion “must be so significant as to materially affect the substantial rights of the complaining party.” Hansen, 835 P.2d at 753.
*125 ¶19 As to relevancy issues, the district court has broad discretion to determine whether or not evidence is relevant and admissible. State v. McKeon (1997), 282 Mont. 397, 938 P.2d 643, citing State v. Oatman (1996), 275 Mont. 139, 143-44, 911 P.2d 213, 216. Relevance is determined based on whether the evidence logically or based on experience has any value in proving the proposition for which it is offered. Oatman, 911 P.2d at 216, citing State v. Oman (1985), 218 Mont. 260, 264, 707 P.2d 1117, 1119. Further, the weighing of potential prejudice against probative value will also be upheld unless the district court committed an abuse of discretion. Oatman, 911 P.2d at 216, citing State v. Laird (1987), 225 Mont. 306, 312, 732 P.2d 417, 421.
¶20 1. Did the District Court err when it denied Simmons’ motion in limine concerning Wells Fargo’s expert testimony of refinery value?
¶21 Simmons sought in its motion in limine to preclude J. David Capers from testifying concerning refinery value. Simmons argues that Capers’ testimony was not relevant to the issue of Simmons’ damages. Simmons also argues the valuation testimony offered by Capers was misleading and confusing to the jury because Simmons was seeking lost partnership cash flow, not the value of the facility. Wells Fargo responds that its expert, Capers, did testify to the cash flow and capital improvement needs as well as a market value analysis. Further, Capers testified to a different discount rate than that testified to by Simmons’ damage expert, Knudsen.
¶22 After review of Capers’ testimony and noting that it was not adopted by the jury, and, that it did address cash flow and capital improvement issues — also addressed by Simmons’ expert — we do not find the District Court abused its discretion by denying Simmons’ motion in limine. Alternative approaches to measure loss are within the meaning of Rule 401, M.R.Evid. It is up to the jury to decide which is more or less probable as a measure of loss. Here, the jury did not accept Capers’ testimony concerning valuation, and, thus, the evidentiary ruling by the District Court does not constitute a manifest abuse of discretion.
¶23 2. Did the District Court err when it instructed the jury to disregard testimony by Simmons’ damage expert, Don Knudsen, concerning Holly’s analysis of a sulphur reduction unit at the Black Eagle Refinery (Exhibit 73)?
¶24 During trial, the court admonished the jury “to disregard the testimony regarding the profits expected from the instrument re *126 ferred to that is not yet in evidence.” (Emphasis supplied.) Simmons argues this instruction from the court was reversible error because under Rule 703, M.R.Evid., experts may rely on matters which are not admissible evidence. In this instance, Wells Fargo submits that Simmons’ expert, Knudsen, did not include the sulphur reduction unit in his cash flow analysis and, thus, such testimony was outside the exception provided for in Rule 703, M.R.Evid. Simmons counters that Wells Fargo opened the door when it examined Knudsen about the sulphur reduction unit during cross-examination and that it should have been permitted to ask about the issue as well. The prejudice Simmons points to is that had this testimony been brought out, an additional $25 million in lost income could have been argued to the jury.
¶25 In response, Wells Fargo notes that the admonition of the court related only to testimony concerning the document, Exhibit 73, and that testimony concerning the additional $25 million in damages was elicited later in the trial by Simmons on redirect of Knudsen and not objected to by Wells Fargo.
¶26 The abuse of discretion standard controls this evidentiary determination as well. Here, given the fact the District Court had refused the admission of the Holly document, Exhibit 73, it was not an abuse of discretion for the court to direct the jury to disregard testimony concerning that document. Further, the evidence of the $25 million cash flow loss was elicited without reference to the document and not objected to. Thus, the additional $25 million in lost profit was available to Simmons for jury argument. Accordingly, the District Court did not abuse its discretion on this issue.
¶27 While the dissent urges the absence of a record concerning the expected future profit from the sulphur reduction unit, the following question and answer occurred immediately after the court’s instruction to the jury:
Q [By Mr. Wisch]: Sir, can you calculate for us, please, and tell us what $3.6 million times 16 years is?
A [By Mr. Knudsen]: It would be just over $58 million.
¶28 Thus, the jury had before it without objection the annual profit of the desulfurization unit over its estimated useful life as well as the total profit, of which Simmons would have been entitled to half. It was a decision by Simmons’ counsel not the District Court which kept this figure from final argument to the jury.
*127 ¶29 3. Did the District Court err when it refused Exhibit 73 — a Holly budget document analyzing the profits of the sulphur reduction unit at the Black Eagle Refinery?
¶30 The arguments presented on Issue No. 2 also apply to this issue. In addition, Wells Fargo argues that Rule 703, M.R.Evid., while allowing the expert to rely on inadmissible evidence, does not permit the inadmissible evidence to come in unless it can rely on a separate exclusion to the hearsay rule. Simmons cites Rule 106, M.R.Evid., the rule of completeness, as a basis for admitting the entire document. Wells Fargo argues in response that Rule 106 is not an additional exception to the hearsay rule. Given the lack of reliance on the issues or document by Simmons’ expert in his opinion of lost cash flow and the availability of the increased cash flow figures, for jury argument, it was not an abuse of discretion for the District Court to deny the admissibility of Exhibit 73. Rule 106, M.R.Evid., does not authorize admission of otherwise inadmissible hearsay. State v. Campbell (1978), 178 Mont. 15, 582 P.2d 783.
¶31 Even considering the views of the dissent, application of Rule 703, M.R.Evid., to Exhibit 73 does not support admissibility. Knudsen’s approach to valuation was to calculate historic cash flow which by definition would exclude a future profit projection such as Exhibit 73 from consideration.
¶32 Notwithstanding his expert’s methodology, Simmons’ counsel persisted in eliciting testimony relative to the desulfurization unit, including the amount of annual expected profit, total useful life, and total anticipated profit to the partnership without reference to the exhibit and without objection from Wells Fargo. Given the fact the record contained the essential features of Exhibit 73, the District Court did not indulge in an abuse of discretion for not admitting it under the completeness doctrine. Rule 106, M.R.Evid. Additional damage calculations were available but not argued to the jury based solely on trial strategy adopted by Simmons’ counsel.
¶33 4. Did the District Court err when it refused Simmons’ motion for new trial on damages?
¶34 Simmons argues a new trial should have been granted by the District Court based upon alleged false testimony offered by Wells Fargo’s expert, Capers. Simmons contends that its expert testified that the income should include an additional $25 million from the sulphur reduction unit which Holly calculated the unit would yield following its construction. Simmons contends that Wells Fargo’s expert, *128 Capers, testified falsely concerning the operational status of the sulphur reduction proj ect during his latest visit and that his calculations had been verified by Griffin, the refinery manager. Simmons supports its position with statements obtained from Capers in a post-trial deposition wherein Capers revealed that the reduction unit was operating at a reduced capacity and that Griffin did not confirm this calculation of additional annual income. Simmons contends that Griffin would have supported the additional $3.6 million in additional income. Simmons also contends that Wells Fargo’s counsel falsely represented that Griffin was out of town during trial. Simmons argues these statements were false and constituted peijury which should justify a new trial.
¶35 Wells Fargo counters that Capers only testified that the sulphur reduction unit was not fully operational and that Griffin had confirmed that such an operational status would have a negative impact on income. Wells Fargo also argues that its expert, Capers, did not represent Griffin’s position as argued by Simmons, but instead was precluded from testifying because of a hearsay objection by Simmons. Wells Fargo suggests additional cross-examination by Simmons would have clarified these matters and that a new trial is unwarranted.
¶36 Again, the abuse of discretion standard of review governs this Court’s consideration of the denial of a new trial. Morris v. Corcoran Pulpwood Co. (1970), 154 Mont. 468, 465 P.2d 827. The District Court decision on Capers’ alleged false testimony about the sulphur reduction unit and its operational status cannot be said to be an abuse of discretion. Again, the lack of reliance by Simmons’ damage expert on any additional income from the sulphur reduction unit, together with the testimony of the estimated income from the sulphur reduction unit and impact of cash flow over the period ($25 million) — which was not objected to and available for argument to the jury by Simmons — lead us to the conclusion that it was Simmons’ trial strategy, not the District Court ruling, which kept these matters from being fully developed or argued to the jury.
¶37 5. Did the District Court err when it calculated the set-off for the Holly settlement?
¶38 The Pretrial Order provides that Simmons’ loss (verdict) would “be offset against the funds plaintiffs have and will receive from Holly for the sale of the refinery.” Simmons argues that the loss in value of Simmons’ stock — Simmons Refining Company and Simmons Oil *129 Company — should be taken into account in implementing the settlement, rather than simply the dollar-for-dollar set-off of cash ($3.5 million) against the $2.2 million verdict. Wells Fargo responds that the loss in value of any stock is alternative but not cumulative damage suffered by Simmons and that Simmons can only recover once for a loss.
¶39 Given the theory of loss advanced by Simmons (cash flow) and the above provision in the Pretrial Order, this Court cannot find the District Court abused its discretion by setting-off dollar-for-dollar the Holly settlement against the verdict received by Simmons.
¶40 6. Did the District Court err when it refused Simmons’ post-trial request for attorney fees?
¶41 Simmons sought approximately $900,000 in attorney fees, post-trial, based upon the request by Wells Fargo for attorney fees in its pleadings. It is undisputed that the Pretrial Order contained no reference to attorney fees. There is also no indication that the issue of attorney fees was raised during trial. Under § 28-3-704, MCA, Simmons argues that attorney fees should be reciprocal and awarded. Wells Fargo cites Naftco Leasing v. Finalco, Inc. (1992), 254 Mont. 89, 835 P.2d 728, as controlling when attorney fees are not contained or implicit in the pretrial order. Again, we cannot find the District Court abused its discretion by denying the request since it was not contained in the Pretrial Order, and, thus, not before the court. Nentwig v. United Industry, Inc. (1992), 256 Mont. 134, 845 P.2d 99; Ducham v. Tuma (1994), 265 Mont. 436, 440, 877 P.2d 1002, 1005.
¶42 7. Did the District Court err when it refused Wells Fargo’s request for sanctions (attorney fees) based on Simmons’ Rule 60(b), M.R.Civ.P., motion?
¶43 Following the January 4,1996, remand order for consideration of Simmons’ request under Rule 60(b), M.R.Civ.P, Wells Fargo sought sanctions against Simmons for its motion. The District Court’s order of May 1,1996, did not specifically address the attorney fees which are deemed denied. Simmons has not pursued the ruling on the underlying motion in this appeal; however, Wells Fargo persists in seeking sanctions.
¶44 Awards of attorney fees in Montana must be based on statutory or contractual authority. Goodover v. Lindey’s Inc. (1992), 255 Mont. 430, 843 P.2d 765 (citing authority). There is also an equitable exception for frivolous litigation providing for attorney fees. Foy v. Anderson (1978), 176 Mont. 507, 511-12, 580 P.2d 114, 116-17.
*130 ¶45 Here, while we do not have an express reason in the District Court order of May 1,1996, for the denial of Wells Fargo’s motion, we also do not have specific statutory contractual or rule authority for the award of attorney fees. In addition, Simmons did prevail in its case against Wells Fargo and nothing in the court order of May 1, 1996, indicates the specific motion at issue was frivolous.
¶46 Based on the foregoing, we cannot say it was error or an abuse of discretion for the District Court to deny Wells Fargo’s request for attorney fees.
¶47 Affirmed.
CHIEF JUSTICE TURNAGE, JUSTICES GRAY, LEAPHART and REGNIER concur.