No. 89-399

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

      Plaintiff and Respondent,

  -v-

ROBERT L. LYNN,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          James E. Handley; Polson, Montana

    For Respondent:

          Hon. Marc Racicot, Attorney General; George Schunk,
Asst. Atty. General; Helena, Montana
Robert Slomski; Sanders County Attorney; Thompson
Falls, Montana

                  Submitted on Briefs:  May 24, 1990

                         Decided:  July 12, 1990

Filed:

_____
         Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from the judgment of the District Court of the Twentieth Judicial District, Sanders County, finding defendant Robert Lynn guilty of the offenses of shooting from a public highway and hunting a game animal during the closed season. We affirm.

The issues are:

1. Whether the District Court erred by denying defendant's motion to exclude from evidence a .22 caliber rifle and ammunition seized from defendant's vehicle;

2. Whether the District Court erred by denying defendant's motion for directed verdict as to Count I (shooting from a public highway) by rejecting defendant's contention that no proof had been adduced concerning the legal right-of-way within which he is alleged to have shot;

3. Whether the District Court erred by denying defendant's motion for directed verdict as to Count I and Count II (hunting a game animal during closed season) by rejecting defendant's contention that no evidence had been adduced from which the jury could determine whether the alleged illegal acts had been done knowingly or purposely.

In the late afternoon of March 13, 1988, Violet Hodges (Hodges) was working around her home, located about seven miles east of Thompson Falls on Highway 200. She heard a volley of gun shots from what she thought was a small caliber rifle. She looked in the direction from which the noise came and saw a tan Jeep

2

Wagoneer pulled off to the side of Highway 200. Hodges also noticed a herd of bighorn sheep running up a hillside, away from the Wagoneer and toward the cliffs above her property.

Hodges, concerned by the shots because hunting season was closed, got in her car to investigate. As she drove down her driveway, Hodges encountered the defendant, Robert Lynn, in the tan Wagoneer. When questioned what he was doing on her property, Lynn told Hodges that he was looking for aluminum cans. After Hodges told Lynn there were no cans on her property, she essentially asked him to leave, which he did. After Lynn left, Hodges surreptitiously followed him as he drove into Thompson Falls. Upon her arrival in town, she reported the shooting to Undersheriff Bill Alexander.

While Hodges was relating her story to the undersheriff, her neighbor telephoned the sheriff's office and reported that a sheep had died from a gunshot wound on her property. The neighbor, like Hodges, reported that shortly before she found the sheep, she heard gunshots from a small caliber rifle. Hodges then described Lynn's vehicle to the undersheriff. She stated that it was a tan Jeep Wagoneer with scrap cardboard in the back, rolled rugs on top and Alaska plates.

The undersheriff then contacted Bruce Sterling, a wildlife technician and part time game warden for the Montana Department of Fish, Wildlife and Parks. He requested Sterling's assistance and proceeded to look for Lynn's vehicle which Alexander said was parked in town.

3

The officers located Lynn's vehicle and subsequently pulled him over for having expired plates and being a suspect in the shooting of the bighorn sheep. When questioned, Lynn denied any knowledge of the shooting. The undersheriff then asked Lynn if he had any weapons. Lynn produced a .38 caliber revolver and a crossbow. Upon examining the handgun, the undersheriff noticed a .22 caliber rifle which was in plain view, although it was wedged between some pieces of cardboard. Lynn allowed him to inspect the rifle.

Lynn was arrested for two traffic violations which are not part of this appeal, and he was allowed to drive his car to the police station "to save him a tow bill and so it could be secured over there." In the meantime, the game warden went to the site of the shooting. There he found five .22 caliber shell casings. The ram was field dressed and a bullet hole .223 inches in diameter was discovered in the ram's neck.

After Lynn was booked and incarcerated, he asked Undersheriff Alexander to get his reading glasses from his car. The undersheriff agreed and while he was in Lynn's vehicle he reinspected the .22 rifle and seized the weapon. Eventually Lynn was charged with the two game violations now on appeal.

Initially Lynn was tried in justice court. Following his conviction, he appealed for a trial de novo in District Court. Shortly before trial, Lynn moved to suppress from evidence the .22 caliber rifle and to dismiss the game violations. Both motions were denied. Trial commenced on May 25, 1989, and following the

4

close of the State's case-in-chief, Lynn moved for a directed verdict. This motion was denied. Following closing arguments, the jury returned a unanimous verdict of guilty on both counts. Sentence was imposed on June 27, 1989 and this appeal followed.

I

Lynn argues that Undersheriff Alexander's seizure of the .22 caliber rifle was unlawful and therefore it should not have been admitted into evidence. In advancing this argument, he maintains the plain view exception, which was the primary argument advanced by the State, does not apply to his case because the rifle does not bear any relationship to the traffic offenses, which were the only crimes he was charged with at the time of the gun's seizure. He argues that plain view searches and seizures are only proper if the items seized bear some relationship to the offense charged.

We disagree with this argument as it is applied to the facts now before us. When Undersheriff Alexander stopped Lynn, he had two reasons. First and foremost was the fact that Lynn was suspected of illegally shooting a bighorn sheep, and second he noticed that Lynn was driving with expired plates. Alexander's suspicions relative to the game violation originated from reports of two citizens. From these two reports, he knew that small caliber rifle shots had been fired from Highway 200 near a herd of bighorn sheep. A vehicle matching Lynn's was seen at that location during the time the shots were fired. Additionally, it was reported that Lynn was found on private property, driving towards the area where the sheep were, before the shooting occurred.

5

Alexander also knew that a sheep had been found dying in this same general area.

This information was sufficient to raise suspicions of Lynn's involvement in the shooting. However, this suspicion was further bolstered by Alexander's observation of the .22 caliber rifle in Lynn's possession. At this point in time, it cannot be denied that Alexander did not have probable cause to seize the rifle. Facts, including eye witness observations and circumstantial evidence, combined to link Lynn to the crime. When a police officer has knowledge of facts, which justify a reasonable belief that he has lawful grounds for prosecuting the suspect for the matter complained of, and surrounding circumstances support this belief, probable cause has been found to exist. See State ex rel. Wong You v. District Court (1938), 106 Mont. 347, 78 P.2d 353. Here there was sufficient evidence linking Lynn to the unlawful shooting and consequently Alexander would have been justified in seizing the rifle when he stopped Lynn's vehicle.

Undersheriff Alexander did not seize the rifle at that time, however. The rifle was seized approximately an hour and a half later when Alexander went to the vehicle, at Lynn's request, to retrieve Lynn's glasses. We are therefore faced with the question of whether this delay rendered the seizure unreasonable.

We hold that the seizure of the rifle was not unreasonable. As stated earlier, at the time of Lynn's arrest, probable cause existed to justify seizure of the rifle. The fact that a time

period of one and a half hours elapsed between the time of arrest and seizure of the rifle at the police station does not overcome the original justification for the seizure. As has been stated on several occasions ". . . searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." See United States v. Edwards (1974), 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771. This rule has been followed in Montana. See State v. Romero (1986), 224 Mont. 431, 730 P.2d 1157. Accordingly, we hold that the District Court did not err in refusing to exclude the rifle from evidence.

## II

Lynn next argues that the District Court erred by denying his motion to dismiss the charge alleging that he violated § 87-3-101(2), MCA, which prohibits shooting a game animal from a public highway or its shoulder. He maintains that no evidence was presented concerning the legal boundaries of the highway and that there was no evidence presented which established from where the shots were fired. He therefore argues that the State failed to prove an essential element of the offense and that, as a result, a directed verdict should have been granted.

We disagree. A directed verdict is appropriate only where there is no evidence upon which the jury could base its verdict. State v. Goltz (1985), 197 Mont. 361, 642 P.2d 1079. In the case on review, circumstantial evidence tended to prove that the shots were fired from the shoulder of Highway 200. These facts were: 1)

Lynn's vehicle was parked on the shoulder of the highway when the shots were fired, and 2) spent shell casings, which were of the same brand found in Lynn's rifle, were found on the shoulder where his vehicle was parked during the shooting. Additionally, photographs were introduced which depicted the shoulder of the highway where Lynn parked his vehicle and the area where the shell casings were found.

Circumstantial evidence may be used to prove elements of an offense. State v. Cox (1987), 226 Mont. 111, 733 P.2d 1307. In the case now before us, the lower court obviously found that the circumstantial evidence was sufficient to support a jury verdict of guilty. The trial court did not abuse its discretion in this regard and, therefore, we will not disturb its ruling on appeal. State v. Goltz (1985), 197 Mont. 361, 642 P.2d 1079.

III

Finally, Lynn argues that the lower court erred in refusing to grant a directed verdict as to both of the game violations. In short he contends that the State failed to prove that he knowingly or purposely shot from a public highway in violation of § 87-3-101(2), MCA, and that he knowingly or purposely shot a game animal out of season in violation of § 87-3-104, MCA. In support of this contention, Lynn argues that the State failed to prove that he was aware that road hunting was prohibited in Montana and aware that the season on bighorn sheep was closed. He further maintains that it was not proven that he knowingly or purposely pulled the trigger of the rifle with an intent to kill the ram.

8

Neither of these contentions have merit.  The first contention can be dismissed by reference to the maxim - "Ignorance of the law is no excuse."  State ex rel. Rowe v. District Court (1911), 44 Mont. 318, 119 P. 1103.  The State had no burden to prove Lynn had knowledge that road hunting is illegal or that he was aware that sheep hunting was closed in March 1988.

The second thrust of Lynn's argument is similarly without merit.  Criminal intent can be proven through circumstantial evidence.  State v. Gladue (1984), 209 Mont. 235, 679 P.2d 1256.  There was sufficient evidence upon which the jury could infer that Robert Lynn purposely or knowingly pulled the trigger to kill the ram.  This evidence included eyewitness testimony of Violet Hodges, the shell casings found on the ground where Lynn's truck had been parked, and the .22 caliber bullet hole found in the ram's neck.

The lower court's judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9