No. 99-566

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 307

302 Mont. 408

15 P.3d 379

STATE OF MONTANA,

Plaintiff and Respondent,

v.

WILLIAM BAKER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender Office, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Elizabeth L. Griffing,

Assistant Attorney General; Helena, Montana

Brant S. Light, Cascade County Attorney; Susan Weber, Deputy

County Attorney, Great Falls


Submitted on Briefs: July 13, 2000
Decided: December 7, 2000


Filed:


_____


Clerk


Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 Defendant, William Baker was charged in the District Court for the Eighth Judicial District in Cascade County with three offenses: robbery; misdemeanor theft; and carrying a concealed weapon. He entered pleas of not guilty, and was tried by a jury on April 26 and 27, 1999. The jury found him guilty of all three offenses. Baker appeals from his convictions. We affirm the judgment of the District Court.

¶2 The following three issues are presented on appeal:

¶3 1. Did the prosecutor violate Baker's right to due process and privilege against self-incrimination by commenting on his silence?

¶4 2. Did the prosecutor violate Baker's attorney-client privilege by asking him questions regarding attorney-client communications?

¶5 3. Did the District Court err by giving a flight instruction to the jury?

## FACTUAL BACKGROUND

¶6 On the night of November 26, 1998 and during the early hours of the next morning, Richard O'Brien drove to the city of Great Falls. Along the way, he picked up William Baker. He took him to two different bars before Baker requested to be driven to another location. Then, on the way to the third location, Baker allegedly leaned forward as if in pain, pulled out a gun, told O'Brien to give him all his money, and directed him to drive

down an alley. Instead O'Brien put the car into park, threw his wallet at Baker and ran from the car. A passing truck driver picked O'Brien up and then they called the police.

¶7 The police apprehended Baker five blocks away from where O'Brien left him. Baker was visibly intoxicated and seemed out of breath. He told the police that after drinking that night at a bar, he was on his way to his daughter's place of employment. The officer asked Baker if he was carrying a weapon and Baker denied possessing one. However, when the officer began to pat-down Baker, Baker reached behind his back for his gun. The officer stopped him and took the gun away from Baker. Baker stated that the gun belonged to someone else.

¶8 The police took Baker into custody. After being advised of his Fifth Amendment rights, Baker told the police that someone had given him a ride downtown immediately before he was apprehended by the police officers. Additionally, Baker told the police that he did not know who owned the gun or how he acquired it.

¶9 At trial, Baker admitted being very intoxicated during that night and unable to clearly recall the circumstances surrounding the alleged robbery. He did remember, however, believing that he was being sexually attacked by O'Brien. He further claimed that O'Brien owned the gun and Baker took it from him in a struggle. He asserted that he did not remember these facts until a few days prior to trial and was embarrassed about what happened. Baker's explanations were provided in response to questions from his own attorney. During cross-examination, the prosecution asked additional questions about when Baker recalled these events and when he first told his lawyer about them.

¶10 On appeal, Baker claims that this line of questioning by the prosecutor violated his rights of due process guaranteed by the Fourteenth Amendment and his Fifth Amendment privilege against self-incrimination. Furthermore, he claims that the District Court erred by giving a flight instruction to the jury.

## DISCUSSION

## ISSUE 1

¶11 Did the prosecutor violate Baker's right to due process and privilege against self-incrimination by commenting on his silence?

¶12 The State of Montana contends that the issues asserted on appeal are not properly reviewable because the Defendant failed to object to the prosecutor's line of questioning. The general rule is that "the defendant is limited to those issues that were properly preserved in the district court . . . . " *State v. Lafley,* 1998 MT 2, ¶ 26, 287 Mont. 276, ¶ 26, 954 P.2d 1112, ¶ 26. Baker, however, urges this Court to review the claimed errors pursuant to the plain error doctrine. We articulated this rule in *State v. Finley* (1996), 276 Mont. 126, 915 P.2d 208, where we held:

> [T]his Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.

*Finley, 276 Mont. at 137, 915 P.2d at 215. See also, State v. Brown, 1999 MT 31, 293 Mont. 268, 975 P.2d 321.*

¶13 When we determine the applicability of the common law plain error doctrine, we consider the totality of the circumstances in each case. *State v. Brown*, 1999 MT 31, ¶ 12, 293 Mont. 288, ¶ 12, 975 P.2d 321, ¶ 12. The plain error rule is reserved for "exceptional cases" and should be used sparingly. *State v. Sullivan* (1996), 280 Mont. 25, 31, 927 P.2d 1033, 1036. When invoking this doctrine, the court evaluates the nature of the constitutional rights implicated, and not the sufficiency of the evidence. *Finley*, 176 Mont. at 137, 915 P.2d at 215.

¶14 In this case, as in *Finley*, Baker's claims of error implicate his rights to due process and the privilege against self-incrimination. The principle that a defendant's silence cannot be used to incriminate him during trial is a core constitutional right. However, Baker failed to demonstrate that any fundamental unfairness resulted from the questions to which he now objects. The record demonstrates that the Defendant, as part of his direct testimony, admitted telling conflicting stories, denied being able to conclusively refute the victim's story and was generally unable to precisely remember what and when he told the police officers, the court psychologist, or his own attorney with regard to the events of the alleged robbery. The State had the right to impeach Baker with follow-up questions pertaining to these matters.

¶15 Baker's prearrest silence, as the State suggests, cannot be the basis of a *Doyle* error

and, therefore, does not warrant the application of the plain error doctrine. *See State v. Sadowski* (1991), 247 Mont. 63, 805 P.2d 537.

¶16 Furthermore, contrary to Baker's assertions, the *Sullivan* case does not support his argument. In *State v. Sullivan*, the defendant did not take the stand or make any statement to the police about the crime he had committed. *Sullivan* (1996), 280 Mont. 25, 30, 927 P.2d 1033, 1036. Likewise, *United States v. Tenorio*, (11th Cir. 1995), 69 F.3d 1103, 1106, involved a defendant who declined to waive his right to remain silent or take the stand.

¶17 Baker, however, made several statements to the police, both prior to and after being given the *Miranda* warning. In fact, no evidence from the record shows that Baker declined to make a statement or appeared reluctant to tell his story. Rather, he told the police a different story every time they asked him questions and subsequently proceeded to testify to a completely new version of the story.

¶18 A criminal defendant does not have a right to speak freely during direct testimony and then attempt to limit the prosecutor's cross-examination. *State v. Wilson* (1981), 193 Mont. 318, 324, 631 P.2d 1273, 1277. Once a defendant makes inconsistent statements on the stand, the prosecutor may properly impeach those inconsistent statements. *State v. Graves* (1995), 272 Mont. 451, 901 P.2d 549. "If [a defendant] takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like any other witness." *Wilson*, 193 Mont. at 324, 631 P.2d at 1277 (quoting *Brown v. United States* (1958), 356 U.S. 148, 154-55, 78 S. Ct 622, 626, 2 L. Ed. 2d 589, 596-97).

¶19 Under the circumstances in this case, we conclude that the fundamental fairness of the trial has not been drawn into question and therefore, we will not review Baker's Fifth and Fourteenth Amendment claims pursuant to the plain error doctrine.

## ISSUE TWO

¶20 Did the prosecutor violate Baker's attorney-client privilege by asking him questions regarding the attorney-client communications?

¶21 Baker contends that the prosecutor violated his attorney-client privilege by asking him on cross-examination, when he first told his attorney about the events related at trial. No objection was made to this question during the questioning. The State asserts that the Defendant opened the door to these questions during his direct testimony and if an error

did occur, any objection to it was waived.

¶22 During the direct examination of Baker, Baker's lawyer asked him about his memory problems.

> Q. And when you and I first talked, your recollection was very fuzzy?
>
> A. Yes
>
> Q. And things have clarified over time; is that correct?
>
> A. Yes.

During cross-examination, the prosecutor simply followed up this line of questioning by asking when Baker first recalled events sufficiently to relate them to his attorney.

¶23 Baker argues that the Court should follow the *State v. Quattlebaum* (S.C. 2000), 527 S. E.2d 105, decision in which the South Carolina Court held that a violation of attorney-client privilege implicates the Sixth Amendment right to effective counsel. This argument is without merit. As the State properly points out, the *Quattlebaum* decision requires a showing of "deliberate prosecutorial misconduct or prejudice" to the integrity of the judicial system. *Id.* at 109. Baker has failed to make such a showing. The prosecutor merely followed up on what Baker's own attorney questioned Baker about during his direct examination.

¶24 As with our discussion of the previous issue, we conclude that Baker has not demonstrated that his claimed error calls into question the fundamental fairness of the trial and, therefore, we decline to review this issue pursuant to the plain error doctrine.

## ISSUE 3

¶25 Did the District Court err by giving a flight instruction to the jury?

¶26 The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case, *State v. Johnson*, 1998 MT 289, ¶ 28, 291 Mont. 501, ¶ 28, 969 P.2d 925, ¶ 28, and whether the District Court abused its discretion. *State v. Sullivan* (1994), 266 Mont. 313, 324, 880 P.2d 829, 836.

¶27 At trial, the State presented evidence that Baker had left the scene of the crime and seemed "out of breath" when the police officers approached him about the robbery. Based on this evidence, the District Court gave the following jury instruction: If you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, flight by the defendant.

¶28 On appeal, Baker argues that *State v. Hall*, 1999 MT 297, 297 Mont. 111, 991 P.2d 929, should be applied retroactively. In *Hall*, we stated that "[t]he interest of justice is perhaps best served if [evidence of flight] is reserved for counsel's argument, with little if any comment by the bench." *Hall*, ¶ 45. Instructions on flight are both unnecessary and "undesirable in that they tend to inject argument into the judge's charge . . . ." *Hall*, ¶ 46 (citation omitted).

¶29 Although Baker objected to the flight instruction at trial, he did so only on the basis that it was not supported by evidence at trial. "An objection, to be good, must point out the specific ground of the objection." *State v. Walker* (1966), 148 Mont. 216, 223, 419 P.2d 300, 304. The District Court should not be put in error when it was never given a chance to rule on the specific objection. *See State v. Weeks* (1995), 270 Mont. 63, 84, 891 P.2d 477, 490. Therefore, we will not review the instructions on the basis of an objection raised for the first time on appeal. *See* § 46-20-701(2), MCA.

¶30 We decline to address Baker's objection that the flight instruction was a comment on the evidence since that objection is raised for the first time on appeal. Pursuant to § 46-20-104(2), MCA, failure to make a timely objection constitutes a waiver of that objection.

¶31 For these reasons we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.