DA 08-0087

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 439N

STATE OF MONTANA, CITY OF KALISPELL,

Plaintiff and Appellee,

v.

THOMAS MARTIN VanDYKE,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 07-322
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jim Wheelis, Chief Appellate Defender; Lisa S. Korchinski, Assistant
Appellate Defender; Helena, Montana

For Appellee:

Hon. Mike McGrath, Montana Attorney General; Brenda G. Nordlund,
Assistant Attorney General; Helena, Montana

Kristi L. Curtis, Assistant Kalispell City Attorney; Kalispell, Montana

Submitted on Briefs: October 29, 2008

Decided: December 23, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section 1, Paragraph 3(d), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court, and its case title, Supreme Court cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Thomas VanDyke ("VanDyke") appeals from the order of the Eleventh Judicial District Court, Flathead County, denying his motion to dismiss the charge of habitual traffic offender operating a motor vehicle. We affirm the order of the District Court.

¶3 On March 31, 2006, a Kalispell police officer stopped VanDyke's vehicle. A license check indicated that VanDyke had been declared a habitual traffic offender and his license revoked pursuant to § 61-11-211, MCA. VanDyke was charged with violation of § 61-11-213, MCA, habitual traffic offender operating a motor vehicle. Just prior to his trial in the Kalispell Municipal Court, VanDyke advised the city attorney that he intended to argue he had not received notice that he was declared a habitual traffic offender. In response to this information, the City made an oral motion *in limine* to exclude evidence concerning whether VanDyke received such notice, arguing that knowledge of one's status as a habitual traffic offender is not an element of the offense charged. The City also relied upon § 61-11-204(2), MCA, noting that the statute makes service of the notice of declaration and accompanying license revocation "complete upon

2

mailing." VanDyke argued that the lack of notice amounted to a violation of his procedural due process rights under the Montana and United States Constitutions. The Municipal Court granted the City's motion, and VanDyke pled guilty to the offense, reserving the right to appeal the Municipal Court's ruling. The District Court denied VanDyke's resulting motion to dismiss, concluding that his due process rights had not been violated. This appeal followed.

¶4 We review a district court's denial of a motion to dismiss in a criminal case to determine whether the court's conclusions of law were correct. *State v. Barron*, 2008 MT 69, ¶ 10, 342 Mont. 100, ¶ 10, 179 P.3d 519, ¶ 10. Our review of constitutional questions is plenary. *Barron*, ¶ 10. Statutes are accorded a presumption of constitutionality, thus the burden of proof is upon the party challenging the constitutionality of a statute. *State v. Pyette*, 2007 MT 119, ¶ 12, 337 Mont. 265, ¶ 12, 159 P.3d 232, ¶ 12.

¶5 Section 61-11-204, MCA, controls the manner in which a person declared a habitual traffic offender is notified of their status and corresponding license revocation. The statute provides that "service of the notice is complete upon mailing." Section 61-11-204, MCA. We analyze the adequacy of notice of a driver's license revocation, and thus the sufficiency of the statute's notice provision, using the following three factors:

> first, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

3

administrative burdens that the additional or substitute procedural requirement would entail.

*Pyette*, *¶ 17*.

¶6    On appeal, VanDyke argues that because operating a motor vehicle after being declared a habitual traffic offender will result in incarceration, his liberty interest is at stake; and therefore, § 61-11-204, MCA, is constitutionally infirm in that it does not satisfy procedural due process requirements. VanDyke's assertion of unconstitutionality is premised on the theory that his *liberty* interest, not his *property* interest in his driver's license, was put at stake by virtue of the declaration of his status as a habitual traffic offender. We have held that, once issued, a driver's license becomes a property interest that may not be suspended or revoked without the procedural due process guaranteed by the Montana and United States Constitutions. *Pyette*, ¶ 13. VanDyke cites no authority for the proposition that one's property interest in their driver's license is somehow transformed into a liberty interest when that license is suspended and further traffic violations will result in incarceration. We therefore analyze VanDyke's claim in the context of the property interest he has in his driver's license.

¶7    We turn now to the second element of the *Pyette* test—whether the notice provision of § 61-11-204, MCA, creates a risk of an erroneous deprivation of VanDyke's property interest in his driver's license. *Pyette*, ¶ 17. Assessing the merits of VanDyke's argument on appeal requires us to determine whether the notice provided was "reasonably calculated, under all the circumstances, to inform the affected party of the impending action and to give an opportunity to present objections." *Pyette*, ¶ 13.

4

VanDyke concedes that there would be little risk of an erroneous suspension of his driver's license as a result of the notice mandated under the statute. This concession alone is dispositive of the second element of *Pyette*. Moreover, as the District Court correctly noted, VanDyke had the opportunity to file a petition for judicial review of the habitual traffic offender declaration under § 61-11-210(1), MCA, (an opportunity to present objections), but did not do so. Furthermore, we agree with the State that VanDyke had constructive notice of his status as a habitual offender by virtue of his knowledge of the multiple traffic violations responsible for his status as a habitual traffic offender. We have long adhered to the maxim, applicable here, that "ignorance of the law is no excuse." *State v. Tichenor*, 2002 MT 311, ¶ 46, 313 Mont. 95, ¶ 46, 60 P.3d 454, ¶ 46. Finally, VanDyke fails to propose any additional procedures that would better safeguard his property interest in his driver's license so that we might analyze their probable value.

¶8      The third factor of the *Pyette* test contemplates the urgency of the government's interest at stake. The government has a compelling interest in keeping those drivers who are apparently unable to comply with traffic laws off of public highways. *Pyette*, ¶ 27. This interest justifies immediate revocation of the offender's driver's license. Allowing notice to the offender to become effective upon mailing most efficiently carries out that objective. VanDyke's arguments to the contrary are premised upon the theory that his liberty interest are at stake. As stated above, this characterization is without merit, therefore we decline to further address his arguments in that regard.

5

¶9    We have decided to determine this case pursuant to Section 1, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the record before us that the District Court did not err in its disposition of this matter. We therefore affirm the District Court's determination that the notice provision of § 61-11-204, MCA, satisfies constitutional due process standards.


                                        /S/ W. WILLIAM LEAPHART


We concur:


/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE